UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TONIE K. BUSH, | ) | |
|         Plaintiff, | ) | |
| | ) | |
|     vs. | ) | 1:08-cv-1173-WTL-TAB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
|         Defendant. | | |

**REPORT AND RECOMMENDATION**

**I.      Introduction**

Plaintiff Tonie Bush applied for Disability Insurance Benefits and Supplemental Security

Income alleging disability beginning April 1, 2004.  [R. at 13.]  Her claims were initially denied

on March 2, 2005, and upon reconsideration on May 23, 2005.  [R. at 45, 52.]  Administrative

Law Judge ("ALJ") Stephen E. Davis held a hearing on September 17, 2007, after which he

partially awarded Bush benefits in a decision dated October 24, 2007.  [R. at 9, 26.]  The

Appeals Council denied review on August 11, 2008.  [R. at 4–6.]  For the reasons set forth

below, the Magistrate Judge recommends that the ALJ's decision be affirmed.

**II.     Background**

Bush alleges that she has been totally disabled since April 1, 2004, because of

degenerative joint disease, high blood pressure, and a heart condition.  [R. at 54.]  Bush was born

February 20, 1957, and completed the tenth grade.  [R. at 29, 37.]  From 1989 to April 2004,

Bush worked as a cook at various restaurants.  [R. at 30–32, 117.]  In April 2004, Bush stopped

working because of lack of transportation.  [R. at 32.]  Bush testified that she has not worked

since 2004 because of knee problems.  [*Id.*]

Medical records beginning in April 2004 show that Bush sought treatment for wrist pain, high blood pressure, and a rash.  Bush first complained of knee pain in October 2004.  [R. at 145.]  X-rays from October 2004 showed early degenerative joint disease of the right knee, and Bush was prescribed Vicodin for pain.  [R. at 146.]  A physical residual functional capacity assessment on December 15, 2004, reported that she was "partially credible" because her subjective complaints were inconsistent with the objective findings of the medical exam.  [R. at 132.]

In January 2005, Bush was seen by Dr. Alaiwa.  Her weight was 279 pounds, and her height was 65 inches; her blood pressure was 168/118.  She could stand and walk without assistance, and Dr. Alaiwa noted no difficulty in walking.  Dr. Alaiwa found that all joints were within the full range of motion, but Bush was unable to squat completely because of knee pain.  She stated that she was taking Vicodin three times each day for the pain.  At that time, Bush lived with her mother and sister and only performed light housework.  Bush had been prescribed a cane, which she testified she used only one to two times per week.  [R. at 36, 135–37.]

Also in January 2005, Bush was seen by her primary care provider, Dr. Hamaker, who noted that "her knee pains are causing her to be unable to walk except for short distances, and she even complains of pain at rest and at night. . . . She did go to [physical therapy] but really has not been doing the exercises.  She realizes that her weight is a big part of the problem. . . ." [R. at 229.]  Dr. Hamaker concluded that "[b]ecause of chronic degenerative arthritis which limits her mobility, it is my judgment that she is presently unable to work."  [R. at 140.]

In May 2005, Bush was again seen by Dr. Alaiwa.  Her weight was 278 pounds, and her

height was 64.5 inches; her blood pressure was 143/123.  She could stand and walk without assistance, and all joints were within the full range of motion.  She was again unable to squat because of pain, which at that time was "marginally controlled" by Vicodin.  The examiner diagnosed "[o]steoarthritis of both knees with pain."  [R. at 121–123.]

In July 2005, Bush fell down the stairs and dislocated her left shoulder after her right knee gave out.  [R. at 230–31.]  She was referred to physical therapy for her shoulder in October 2005 but was no longer going by February 2006.  [R. at 236–38.]

Throughout 2007, Bush continued to complain of knee pain.  Her weight ranged from 271 to 278 pounds, and her blood pressure ranged from 128/78 to 160/90.  [R. at 241, 245, 247.]  An x-ray of Bush's left knee on March 26, 2007, showed "moderated tricompartmental degenerative changes."  [Tr. at 245.]

At the September 17, 2007, hearing, Bush testified that she was 66 inches tall and weighed 280 pounds.  She testified that she was limited to walking one block and sometimes used a cane.  She testified that her knees hurt all the time, and she could stand or sit for only thirty minutes.  She also testified that she was on a diet and trying to lose weight.  [R. at 35–39.]

Bush's sister also testified at the hearing.  She testified that she helped Bush with her grocery shopping, and Bush's mother did Bush's laundry because the washing machine was downstairs in the basement.  [R. at 40.]  No medical expert or vocational expert testified at the hearing, but Bush's attorney requested a supplemental hearing to take testimony from a medical advisor regarding equivalence "if there's any doubt."  [R. at 41.]

To determine whether Bush is disabled, the ALJ employed the five-step process set out at 20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ determined that Bush had not engaged in

substantial gainful activity since her alleged onset date.  [R. at 15.]  At step two, the ALJ

determined that Bush had a severe combination of impairments including bilateral degenerative

joint disease of the knees, left shoulder impairment, and obesity.  [*Id.*]  The ALJ determined that

Bush's hypertension and heart condition were nonsevere impairments.  [R. at 15–16.]  At step

three, the ALJ determined that Bush did not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments.  [R. at 16.]  The ALJ next

determined that Bush had the residual functional capacity to perform the full range of sedentary

work.  [R. at 17.]  The ALJ found that Bush was unable to perform any past relevant work

because she was unable to stand for the required amount of time.  [R. at 20.]

Finally, the ALJ applied the medical-vocational guidelines and determined that before

Feburary 20, 2007 (Bush's fiftieth birthday), there were a significant number of jobs in the

national economy that she could have performed.  [R. at 21.]  Beginning February 20, 2007,

however, considering Bush's age, education, work experience, and residual functional capacity,

the ALJ reached a finding of disabled.  [*Id.*]

## III.    Discussion

Bush challenges the ALJ's determination that she was not disabled from April 1, 2004, to

February 20, 2007, on several grounds.

### A.    *Denial of due process and selective consideration of evidence*

Bush first argues that she was denied due process of law because the ALJ failed to

consider all the evidence in the record and build a logical bridge from this evidence to his

conclusions.  [Docket No. 17 at 9–11.]  Specifically, Bush asserts that she met her burden of

proof by offering evidence demonstrating that since 2004 her combined impairments met or

medically equaled Listing 1.02A (major dysfunction of both knees resulting in inability to ambulate effectively), combined with Social Security Ruling 02-1p (evaluation of obesity). [Docket No. 17 at 9.]  In a related argument, Bush contends that the ALJ's decision should be reversed because the ALJ failed to consider evidence contrary to the decision and explain the omissions.  [Docket No. 17 at 14.]

As claimant, Bush bears the burden of proving that her condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988)). The Court reviews the ALJ's decision deferentially, upholding if it is supported by substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[A]lthough the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling.") (citations omitted).

Although Bush argues that the ALJ failed to consider evidence establishing disability, she does not identify specific pieces of evidence ignored by the ALJ.  A review of the ALJ's decision reveals that the ALJ did address Bush's evidence supporting a finding of disabled.  The decision considers Bush's height and weight, severe knee pain, inability to stand more than thirty

minutes, inability to squat, and Dr. Hamaker's January 2005 opinion—which did not refer to any

clinical or laboratory findings—that she was "presently unable to work."  [R. at 16–20.]

Moreover, the ALJ's finding that Bush is not disabled is supported by substantial evidence.

Medical records demonstrated that she could stand and walk without assistive devices and all her

joints were within the full range of motion.  The record revealed that Bush cooks, makes her bed,

dusts, shops for groceries with assistance, and does yard work.  [R. at 99.]  This evidence was

sufficient to support the ALJ's conclusion.

> B.      *Failure to summon medical advisor*

Second, Bush argues that the ALJ's decision should be reversed because the ALJ failed

to summon a medical advisor to testify whether Bush's combined impairments medically

equaled a listed impairment.  [Docket No. 17 at 12.]  The Commissioner responds that Bush has

identified no authority requiring an ALJ to obtain medical advisor testimony before determining

whether an individual meets or equals a listed impairment.  [Docket No. 20 at 6.]

The responsibility for deciding medical equivalence rests with the ALJ.  20 C.F.R. §

404.1526(e); Social Security Ruling 96-6p.  When necessary, an ALJ must summon a medical

expert to provide an informed basis for determining whether the claimant is disabled.  *Green v.

Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (citations omitted).  Here, the ALJ considered the

medical evidence and made findings based on the record.  The ALJ specifically discounted the

state medical consultants' opinions because the state consultants had not examined Bush or

considered the most recent evidence.  [R. at 19.]  The ALJ further relied on medical evidence

when assessing Bush's abilities:

> In January, 2005 and May, 2005, she had normal gait and station, could stand and
> walk without the need of an assistive device, could walk on her heels and toes

without difficulty, could tandem walk, and had full range of motion in all joints without evidence of deformity, effusion, or inflammation (Ex 1F at 17-19; Ex 1F at 2-5).  She also had 5/5 muscle strength in both upper and lower extremities, normal grip strength and fine finger manipulative abilities (Ex 1F at 18; Ex 1F at 4).  The only difficulty noted during both the January, 2005 and May, 2005 examinations was her inability to squat due to pain (Ex 1F at 17; Ex 1F at 3).  The residual functional capacity I have assessed for the claimant is well-supported by the objective medical evidence of record and largely supported by the claimant's own testimony.

[R. at 20.]  The ALJ did not make any findings without appropriate medical evidence.

Bush cites *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004), for the proposition that an ALJ must consider a medical expert's opinion on the issue of whether a claimant's impairment equals a listing.  [Docket No. 17 at 13.]  Bush is correct that the Seventh Circuit in *Barnett* identified the ALJ's failure to consider expert testimony as a basis for remand.  *Barnett*, 381 F.3d at 670.  However, the *Barnett* ALJ made a host of errors, including disregarding medical records and testimony and inadequately explaining his conclusions.   In Bush's case, the ALJ carefully considered the medical evidence in making his findings.  Therefore, remand to obtain expert medical testimony is not necessary.

C.      *Credibility*

Third, Bush argues that the ALJ's negative credibility determination is contrary to Social Security Ruling 96-7p because the ALJ "ignored, selectively considered and rejected" evidence in the record.  [Docket No. 17 at 22.]  However, Bush does not identify which pieces of evidence she believes were overlooked by the ALJ.  And a review of the ALJ's credibility determination shows a detailed analysis—including a listing of Ruling 96-7p's seven factors and a thorough discussion of each.  [R. at 17–19.]  Thus, this argument is without merit.

   D.      *Improper reliance on the grid*

   Finally, Bush argues that the ALJ's Step 5 determination must be reversed because the

ALJ erroneously relied solely on the medical-vocational guidelines—also known as "the

grid"—which did not account for her pain.  [Docket No. 17 at 25.]  Neither Bush nor the

Commissioner has fully developed this argument, and therefore it arguably has been waived.

Even overlooking this shortcoming, the issue appears to be governed by the Seventh Circuit's

analysis in *Kapusta v. Sullivan*, 900 F.2d 94 (7th Cir. 1989).  In *Kapusta*, the claimant argued

"that the ALJ should not have applied the grids . . . because [the claimant] suffers from a

significant nonexertional impairment, pain."  *Id.* at 97.  The Seventh Circuit rejected the

claimant's argument:

> the disabling extent of the claimant's pain is a question of fact for the ALJ, and if
> pain is not found to interfere with the claimant's ability to work, then the grids
> may be used.  The ALJ's determination of the extent of Kapusta's pain in this
> case is, as we have pointed out above, supported by substantial evidence.  We
> must therefore affirm her use of the grids to determine disability.

*Id.* (citations omitted).  The ALJ in *Kapusta* had determined that the claimant's complaints of

disabling pain were not fully credible given the claimant's testimony about installing storm

windows into his home, being able to sleep through the night, and referring to his pain as

"uncomfortable."

   As discussed above, the ALJ's credibility determination regarding Bush's complaints of

pain was supported by substantial evidence.  The ALJ concluded that "[w]hile I agree with the

claimant that her impairments cause significant work-related limitations, I do not find that she is

so limited as to be unable to perform sedentary work."  [R. at 19.]  Because the ALJ found that

Bush's pain did not interfere with her ability to work, use of the grid was appropriate under

8

*Kapusta*.

## IV.    Conclusion

For the above reasons, the Magistrate Judge recommends that the ALJ's decision be affirmed.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

    Date:    12/15/2009

_____

        Tim A. Baker
        United States Magistrate Judge
        Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net